IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| AARON LAMON MUSE, #1613149 | § | |
| VS. | § | CIVIL ACTION NO. 6:13CV350 |
| DIRECTOR, TDCJ-CID | § | |

ORDER OF DISMISSAL

Petitioner Aaron Lamon Muse, an inmate confined in the Texas prison system, filed the above-styled and numbered petition for a writ of habeas corpus challenging his October 30, 2009 Smith County conviction for aggravated robbery in cause number 007-0413-09 of the 7th District Court of Smith County, Texas. *See* Petition at 2. (Dkt. # 1). The Twelfth Court of Appeals affirmed his conviction on direct appeal on May 31, 2011, in case no. 12-09-00370-CR. *Id.*; *see also Muse v. State*, 2011 WL 2130349 (Tex. App. - Tyler May 31, 2011, pet. ref'd).

The federal petition was referred to United States Magistrate Judge K. Nicole Mitchell, who issued a Report and Recommendation on August 29, 2016, concluding that the petition for a writ of habeas corpus should be dismissed with prejudice. Muse filed objections, challenging the Report as to grounds 2, 5, 7, 8, 10, 12, 15, 17, 19, 20, 22, and 23. *See* Objections to Magistrate Judge's Report, at *1. (Dkt.#75). Muse also states that he wishes to waive grounds 1, 3, 4, 6, 9, 11, 13, 14, 16, 18, 21, and 24. *See id.*

**Standard of Review and Reviewability**

Where a magistrate judge's report has been objected to, the district court reviews the recommendation *de novo* pursuant to Federal Rule of Civil Procedure 72. *See also* 28 U.S.C § 636(b)

1

(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). During a *de novo* review a court examines the entire record and makes an independent assessment of the law. When no objections are filed, petitioner is barred from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc* ).

Muse attempts to enlarge certain claims in his objections. *Compare* Objections at 1-50 with Fed. Pet. at 6-16.1 Most of what Muse filed originally including his supporting memorandum was stricken by this Court. *See* Dkt. #2-5, 43. The only arguments before the Court are those presented in his federal petition. *See Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir.1994); *see also Paterson—Leitch Co. v. Massachusetts Municipal Wholesale Electric Co*., 840 F.2d 985, 990-91 (1st Cir. 1988)(explaining that a party "has a duty to put its best foot forward" before the Magistrate Judge—i.e., "to spell out its arguments squarely and distinctly" and does not allow him to raise expanded or new allegations not before the Magistrate Judge). This court will not review new claims presented for the first time in Petitioner's objections. *See Long v. McCotter*, 792 F.2d 1338, 1345 (5th Cir. 1986) ("we ordinarily do not consider issues that have not been presented to the court of first instance"). Therefore, the court is not considering these new arguments raised by petitioner in his objections to the Report.

AEDPA imposes an almost-complete bar to relitigation of any constitutional claim that was adjudicated on the merits in state court. See 28 U.S.C. § 2254(d) (West 2016). The statute provides three narrow "exceptions to § 2254(d)'s relitigation bar." *Harrington v. Richter*, 562 U.S. 86, 100-101 (2011). To satisfy one of those exceptions, the prisoner must show (1) that the state court's decision

was contrary to federal law that was clearly established in Supreme Court holdings, 28 U.S.C. § 2254(d)(1); (2) that the decision was an unreasonable application of such law, *id.*; or (3) that the decision was based on an unreasonable factual determination, *id.* § 2254(d)(2) (West 2016).

To award habeas relief to a prisoner in state custody, a federal court must consider every justification that the state court provided - and it must hypothesize every justification that the state court could have provided - and conclude that the denial of habeas relief is so outrageous and unreasonable that every fairminded jurist unanimously would condemn it. *Richter*, 562 U.S. at 101-102. AEDPA also provides that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

The presumption of correctness is especially strong when the trial court and the habeas court are the same. *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Amos v. Scott*, 61 F.3d 333, 347 (5th Cir. 1995); *James v. Collins*, 987 F.2d 1116, 1122 (5th Cir. 1993). When a state trial judge is also the judge hearing the state habeas claim, that judge is in an optimal position to assess the credibility of the affidavits. The state judge had the benefit of observing the witnesses and attorneys and hearing testimony at trial. The state trial judge could make credibility determinations based on the demeanor of the witnesses he heard at trial, without holding a separate hearing to take live testimony from the witnesses. *Baldree v. v. Johnson*, 99 F.3d 659, 663 (5th Cir. 1996); *see* also *Buxton v. Collins*, 879 F.2d 140, 146 (5th Cir. 1989). The record indicates that the Honorable Kerry Russell presided over both the trial and state habeas proceeding; consequently, his findings are entitled to additional

3

deference. *See* SHCR-13 at cover (Clerk's Summary Sheet). The adjudication of Muse's claims in state court was not so outrageous and unreasonable that every fairminded jurist unanimously would condemn it.

## Discussion of Petitioner's Objections

### I. Tampering with the Evidence (ground two).

Muse re-urges his claim that the State planted a pair of his tennis shoes at the crime scene. *See* Objections at 2-8. Muse claims the tennis shoes were initially depicted sitting on the tailgate of his father's truck, then planted in his mother's house. *See id.* at 2. According to Muse, the State then altered a photograph of the shoes making them appear to be lying on "'green-colored' carpet." *See id.* at 2. Muse specifically claims that the Court should have held an evidentiary hearing to explore his evidence-tampering claim and that it should have granted his motion to hire a forensic video examiner to determine whether there was tampering. *See* Objections at 8-9.

This is a new claim by Muse. He did not claim in his federal petition that the State manipulated the photograph of the shoes by adding a "green-colored" carpeted background. *See* Fed. Pet. at 6. Further, the Report correctly states that the planted-evidence claim was fully vetted not only during the state-habeas process but also at trial. *See* Report at 8-9. A jury heard this argument and found it unpersuasive as did the judge who presided over both his state-habeas application and his trial. Judge Russell found:

> "There is no evidence in the record of this case that the State, this Court, the official court reporter of this Court, or any member of law enforcement involved in the investigation and/or prosecution of this case, tampered with or altered or replaced or substituted any piece of evidence before, or after, it was admitted into evidence at the trial of this cause."

SHCR-13 at 895.

Judge Russell's findings are accorded additional deference. *See Clark*, 202 F.3d at 764.

Further, sufficient evidence besides the alleged planted shoes linked Muse with the robbery. *See Muse v. State*, No. 12-09-00370-CR, 2010 Tex. App. LEXIS 10418, at \*\*1-5 (Tex. App.–Tyler 2010, pet. ref'd).

Muse's request for an evidentiary hearing on this issue is denied. The Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying his claims, especially where . . . [as here] the trial court and the state habeas court were one and the same." *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000); *see also Perillo v. Johnson*, 79 F.3d 441, 446-47 (5th Cir. 1996). As the state-habeas trial court noted and as Muse acknowledges, there is a substantial amount of documentation already found in the record. Where the record is fully documented, a district court does not abuse its discretion in failing to hold an evidentiary hearing. *See id.*

Since Judge Russell presided over both Muse's trial and state-habeas application, he had first-hand knowledge of the proceedings. His findings are afforded an additional presumption of correctness. *See Clark v. Johnson*, 202 F.3d 760, 765 (5th Cir. 2000); *see also Perillo*, 79 F.3d at 446-447).

Moreover, the Supreme Court held that a federal court cannot expand the record on a claim adjudicated on the merits in state court. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Specifically, the Court said, "We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. Issues that are mixed questions of law and fact are evaluated under section 2254(d)(1). *Martin v. Cain*, 246 F.3d 471, 475-476 (5th Cir. 2001). Section 2254(d)(1) is the standard of review this Court will apply in evaluating Muse's Sixth Amendment claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010) ("Claims of ineffective assistance of counsel involve mixed

questions of law and fact and are governed by § 2254(d)(1)."). Claims concerning prosecutorial misconduct are mixed questions of law and fact. *Brazley v. Cain*, 35 F. App'x 390, 2002 WL 760471, at *4 n. 4 (5th Cir. Apr. 16, 2002); s*ee also United States v. Emueqbunam*, 268 F.3d 377, 403–04 (6th Cir.2001); *Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir.2000); *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir.1997); *United States v. Spillone,* 879 F.2d 514, 520 (9th Cir.1989).

These claims were adjudicated on the merits in state court. *See* SHCR-10 at 894-897. Consequently, this Court's review of these claims is limited to the record that was before the state court. *See Pinholster*, 131 S. Ct. at 1398. Ultimately, the hearing will have "no bearing" on this Court's ultimate decision. *See id*. at 1400.

Finally, there is no real factual dispute that, if resolved in Muse's favor, would entitle him to relief. *See Murphy*, 205 F.3d at 816. His prosecutorial misconduct claim rests on an allegation that the police planted a pair of black tennis shoes. The jury heard that argument and disbelieved it. *See* V RR 182-183. Judge Russell found that there was no evidence that the tennis shoes were taken out of the truck and planted in Muse's house. V RR 212. Judge Russell made the same conclusion in Muse's state habeas application. SHCR-13 at 895. The claim must also be weighed against all the evidence supporting the verdict, such as the presence of his DNA on the clothes worn by the suspect. *See Muse*, 2010 Tex.App. LEXIS 10418, at **14-17; *see* also Resp. to Mot. for an Evid. Hrg. at 2-3. (Dkt. #46).

Muse is not entitled to an evidentiary hearing, nor is he entitled to a forensic examiner. A federal habeas court may authorize funding for investigative, expert, or other services upon finding that such services are "reasonably necessary for the representation of the defendant[.]" 18 U.S.C. § 3599(f) (West 2016). The Fifth Circuit has construed "reasonably necessary" to mean that an indigent petitioner "must demonstrate a 'substantial need' for the requested assistance." *Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004); *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000), and *Fuller v.*

*Johnson*, 114 F.3d 491, 502 (5th Cir. 1997). Muse has not shown a "substantial need" for an investigation. Muse presented his evidence tampering argument at trial. Judge Russell found that the claim had no merit. *See* Report at 9-10; SHCR-13 at 895. This objection is overruled.

## II. False, Misleading, or Perjured Testimony (ground five).

In his fifth ground, Muse claims that the DPS chemist, Melissa Haas, "conveyed an impression to the jury which she or the state knew to be false." *See* Objections at 8. Haas testified that she looked for a "full DNA Profile" using "body fluids such as blood, semen, sweat, saliva, and even in some cases urine". *See id.* at 10. Muse claims that she gave the jury a false or misleading impression when she testified that she had "extracted a 'full DNA Profile' (Vol. IV, RR, page 108, lines 8-9) from the firearm allegedly belonging to the petitioner and at least one unknown contributor. Muse claims Haas mislead the jury when she did not identify the types of "biological evidence" like his "blood, semen, saliva, sweat, or urine." *See id.* Muse claims the testimony was therefore impermissibly "vague". *See id.*

The State cannot knowingly use perjured testimony or allow perjured testimony to go uncorrected. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 154 (1972). To prove a due process violation in such a case, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Perjured testimony is material only when "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000); *see United States v. Washington*, 44 F.3d 1271, 1282 (5th Cir. 1995) (materiality prong not met where allegedly perjurious statements "have nothing to do with [the defendant's] guilt or innocence" and evidence of guilt is "overwhelming").

Contradictory testimony from witnesses, inconsistencies within a witness' testimony, and conflicts between reports, written statements and the trial testimony of prosecution witnesses do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988); *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987); *United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981).

It cannot be said that the state suborned false or misleading testimony based upon testimony by a witness who "conveyed the impression" and who was otherwise "vague." Haas obviously had a DNA sample. The failure to identify the specific "body fluid" does not rise to the level of perjury. The state habeas trial court said:

> There is no evidence in the record of this case that DPS criminologist, Ms. Melissa Haas, presented perjured testimony at the trial of this case regarding the testing she conducted on the evidence in this case.

SHCR-13 at 895. Judge Russell's finding was reasonable. This objection is meritless, and is overruled.

### III. Ineffectiveness of Appellate Attorney (grounds seven and eight).

Muse's claims regarding both trial and appellate counsel are governed by the Supreme Court's standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Amador v. Quarterman*, 458 F.3d 397, 411 (5th Cir. 2006) (recognizing that *Strickland* applies to ineffective assistance of appellate counsel claims). To establish deficient performance, Muse must show that counsel's representation "fell below an objective standard of reasonableness." *See id*. To establish prejudice, Muse must show that his counsel's deficient performance that but for his counsel's deficient performance, there is a reasonable probability that the outcome of the appeal would have been different. *Id*. Because an appellate counsel is not required to raise every nonfrivolous claim on appeal, but may select from among them in order

to maximized the likelihood of success on appeal, it is difficult to demonstrate the incompetency of counsel when a brief on the merits is filed. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Muse has to overcome two deferential standards of review, the first set out in *Strickland v. Washington*, the second under the AEDPA. *See Knowles v. Mirzayance*, 173 L. Ed. 2d 251, 262 (2009) (noting the "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard" and citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam).

      A.      *Fourth Amendment challenge (ground seven).*

In ground seven, Muse claims his appellate attorney, James Huggler, was ineffective in failing to argue that police had seized his stepfather's truck without a warrant in violation of the Fourth Amendment. *See* Objections at 14. Muse claims for the first time in his Objections that his appellate attorney, James Huggler, "mislead" the Twelfth Court of Appeals in saying that "Gordon gave the officers permission to search the truck". *See id.* at 14-15. First, this is a new allegation. Muse did not claim his attorney mislead the appellate court in his federal petition. *See* Fed. Pet. at 9.

Further, this claim is meritless. The record indicates that Rolando Gordon gave police consent to search the home. *See* IV RR 51. Detective Chuck Houghton then testified that he saw a jacket matching the description of the one worn by the suspect in plain view in the front seat of the truck parked in Gordon's driveway and decided to impound the truck. *See* IV RR 51-52.

Muse's objection, in addition to being new, presents no appellate issue. The Supreme Court has explained that the "plain view" doctrine is not really an "exception" to the warrant requirement because the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable. *See Texas v. Brown*, 460 U.S. 730, 738–739 (1983). The record also indicates that police obtained a search warrant for the truck. *See* IV RR 54-55. Police were at the Gordon residence having traced the license plate back to its owner. The plain-view doctrine gave police grounds to seize the

jacket and probable cause for a warrant, which it obtained. There was no appellate issue to raise; therefore, this objection is meritless.

      B.      *Motion for mistrial (ground eight).*

Next, Muse claims the Report was incorrect in finding that Huggler was not ineffective in failing to Judge Russell's ruling overruling Muse's motion for a mistrial when a juror announced after she had been seated that she had been the victim of a robbery. *See* Objections at 17. Muse believes that he or the State should have been able to ask this juror questions about her potential bias. *See id*. at 18. As the Report states, Judge Russell fully discussed the propriety of asking the juror why she had not disclosed her prior assault when she had in fact made that disclosure prior to being placed on the jury. *See* Report at 18.

As Judge Russell pointed out, Juror Number 32, Angela Tarnow, was wrong when she said that she failed to disclose during voir dire that she had been the victim of a robbery. *See* III RR 7, 22-23. A lie during voir dire might disclose a bias. *See McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (juror failed to answer material question that might have provided valid basis for challenge honesty on voir dire). After considering this issue, Huggler decided not to raise it. *See id*. at 16-17.

Appellate counsel is obligated only to raise and brief those issues that have the best chance of success. *See Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). In fact, appellate counsel has a duty to focus on "a few key issues" to the exclusion of the weaker ones. *See Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989). This objection is overruled.

## IV.    Prosecutorial Misconduct (ground ten).

Muse next reasserts his argument that the State knowingly used planted evidence, the tennis shoes, to obtain the conviction. *See* Objections at 20. In habeas corpus proceedings, alleged

prosecutorial misconduct during a state criminal trial is reviewed to determine whether it so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process. *Barrientes*, 221 F.3d at 753. "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted". *Id*. at 753.

Police had consent to search the Gordon residence. There is no proof that police planted the shoes in question in the house. *See id*. at 18-19. The state habeas trial court found:

> There is no evidence in the record of this case that the State's prosecutor, Mr. Richard Vance, committed prosecutorial misconduct by offering and having admitted into evidence a pair of dark colored shoes found at the defendant's residence. Said evidence was relevant and admissible under the Rules of Evidence.

SHCR-13 at 896.

There was sufficient evidence tying Muse to the crime, including the DNA evidence. *See Muse*, 2010 Tex. App. LEXIS 10418, at \*\*1-5. There was no misconduct. This objection is overruled.

## V.  Ineffectiveness of Trial Counsel (grounds twelve, fifteen, seventeen, nineteen, and twenty-three).

Regarding his claim of ineffective assistance of counsel, Muse has to overcome two deferential standards of review, the first set out in *Strickland v. Washington*, the second under the AEDPA. *See Knowles*, 173 L. Ed. 2d at 262 (noting the "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard").

### A.  *Failing to object and to move to introduce (ground twelve).*

Muse claims that his trial attorney, Kurt Noell, failed to object when the State offered State's Exhibit 66, which was the photograph of the tennis shoes Muse claims were planted in the house. *See* Objections at 22. Muse argues that Noell should have requested a continuance and an expert who could verify that the background had been altered. *See* Objections at 22-23. Muse claims that the "'black-colored tennis shoes'" had no bearing to the case, and Noell should have lodged an objection to the

11

introduction of the exhibit. *See id.* at 23.

This is a new allegation. In his federal petition he claimed that Noell was ineffective in failing (1) to object to the introduction of the black tennis shoes and (2) to make a motion asking the trial court to introduce the CDs depicting the tennis shoes on the tail gate of the truck. *See* Fed. Pet. at 11. There was no mention of seeking a continuance of the trial or obtaining a forensic-video expert. *See id.* He has abandoned any complaint that Noell should have shown the jury the CD disk, the "Mineola Photos" because he did not present the issue in his objections. *See* Objections at 22-25. The only issue raised is Noell's failure to object.

Further, the Report correctly noted that Noell had a legitimate reason for not objecting; namely, Noell thought there would be no reason to object to evidence having "'no bearing on the case.'" *See* Report at 20-21. Even if the evidence were inadmissible, the failure to object to the admission of inadmissible evidence does not necessarily establish a deficiency. Muse must demonstrate that Noell committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant seeking to prove ineffective assistance of counsel "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689; *see also Michel v. Louisiana*, 350 U.S. 91, 101 (1955). The presence of those tennis shoes "had no bearing on the case," as Muse submits, and would not have had any affect on the jury's deliberations.

  B. *Failing to expose the inconsistencies in Shalandria Dawson's testimony (ground fifteen).*

Muse claims that Noell failed to "ask Dawson how sure she was about the time" she spent with Muse and about the events the evening of January 2, 2009. *See* Objections at 26. He focuses on the 8:00 to 9:20 p.m. time frame. He claims that, if it were true that Dawson saw Muse at 8:00 p.m. in

Tyler, Texas, then he could not have robbed the Dollar General Store in Lindale, Texas, which was thirteen miles away, at 8:00 p.m. *See id*. He also could not have been the person who robbed the Super Food Mart Store in Mineola, Texas around 9:00 p.m. because Dawson said she saw Muse at a pool hall back in Tyler, Texas "about 9:00 or 9:20 P.M." *See id*. at 27. Muse argues that Noell was ineffective in failing to flush out these inconsistencies in the time frame. *See id*. at 28.

The Report addressed Dawson's equivocations about the time. *See* Report at 23-25. Dawson did not claim to be certain about her time frames. *See id*. at 24-25. Any doubts about whether Muse could have committed these crimes were settled against him considering all the physical evidence linking him to the crime.

A summary of the evidence shows that the person who robbed the Super Food Mart Store also robbed the Dollar General Store since the cash drawers belonging to the Dollar General Store were found in the parking lot of the Super Food Mart Store after it was robbed by a person driving a truck belonging to Muse's stepfather, Rolando Gordon. Police then talked to Gordon who said that his two sons drove the truck. *Muse*, 2010 Tex. App. LEXIS 10418, at **1-3. Muse's brother was in jail at the time; unless Gordon was the robber, Muse was the only suspect. *See id*. at **2-3.

Muse arrived at Dawson's place in a white Buick. *See id*. at *4. Dawson and Muse then drove by Muse's residence and spotted police. *See id*. Muse dropped Dawson off, went back to his house, and showed back up at Dawson's apartment telling her he had been chased by police. *See id*. at *4. Muse claims Dawson's statement that Muse told her that he had been chased by police was a lie. Police confirmed that they chased a suspect they spotted in the rear of Gordon's home where Muse was living. Dawson's statement was corroborated by police.

Police lawfully searched the truck parked in Gordon's driveway and found a ski mask, gloves, two black jackets, a bank bag containing bills and coins, a white plastic bag containing coins, a silver

13

firearm, and a bag containing one spent cartridge and several rounds of live ammunition. Police also found a ski mask, gloves, dark blue jeans, and dark colored shoes in Muse's room. The officers sent the ski mask, gloves, and the silver handgun found in the truck to a DPS laboratory for DNA testing. Muse's DNA matched specimens taken from all three items. Additional DNA from an unknown donor or donors also was found on the items. *Muse*, 2010 Tex. App. LEXIS 10418, at *3.

The evidence indicates that Muse's proposed time lines are incorrect and that he was properly convicted. If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fall". *See Green v. Lynaugh*, 868 F.2d 176, 177 (5th Cir. 1989).

    C.    *Failing to uncover juror bias (ground seventeen).*

Muse claims a juror revealed on the second day of trial that she had been the victim of a robbery. *See* Objections at 35. Angela Tarnow, who, after being seated on the jury, told Judge Russell that she had forgotten to disclose that she had been the victim of a robbery.[1] Muse blamed Noell for failing to ask her to "state 'separately and specifically' what type of crime she had been previously been a 'victim' of." *See id.* at 36. Muse argues that Noell should have asked "questions calculated to bring out information which might be said to indicate a juror's inability to be impartial, truthful, and the like." *See id*. Muse believes that Tarnow was disqualified under article 35.16(a)(9) of the Code of Criminal Procedure. *See id*.

The State asked the panel whether anyone had been the victim of an "aggravated robbery" or "had some sort of weapon pointed at them." *See* II RR 121. Tarnow indicated that she had. *See* II RR

---

[1]Tarnow was juror number 32. *See* CR at 135.

122. Tarnow, however, indicated that she had no bias. *See* II RR 122. Noell also asked the panel to disclose whether they had been the victims of violent crime. *See* II RR 156-158. Turnow again indicated that she had. *See* II RR 15. Noell then asked "is there anyone that feels now that might affect their decision making in this case?" She did not indicate that it would. *See* II RR 158.

A biased juror is subject to a challenge for cause. *See* Tex. Code Crim. Proc. art. 35.19(a)(9) (West 2009). Tarnow, though, was not subject to a strike for cause because she indicated no bias. *See Jones v. State*, 982 S.W.2d 386, 390 (Tex. Crim. App. 1998) (before prospective juror can be excused for cause law must be explained to her and she must be asked whether she can follow law regardless of her personal views). Noell was not ineffective in failing to ask Tarnow additional questions. *See Fuller v. Johnson*, 158 F.3d 903, 907 (5th Cir. 1998) (attorney's performance not deficient where "no suspicion is raised about the truthfulness of the juror's responses" and alleged deficiency not prejudicial where Petitioner failed to undermine "the reliability or the fairness of his trial").

    D.    *Failing to object to inconsistencies in Melissa Haas's testimony (ground nineteen).*

Muse argues in his objection regarding ground nineteen that "DNA expert, Melissa Haas, conveyed a false impression to the jury she knew to be false concerning the DNA analysis she allegedly conducted on the gun." *See* Objections at 37. She referred to "swabbing 'one-glove' then 'two-gloves' swabbing the 'ski mask,' and then distinguishing between 'swabbing' to 'tape-lifting.'" *See id*. at 37-38. He also re-argues his claim that she left a "false impression with the jury" because she failed to identify whether she analyzed Muse's "blood, semen, saliva, sweat, or urine." *See id*. at 38.3

The Report correctly found that Noell was not ineffective. *See* Report at 28-29. A "false impression" is not perjury or misleading. To the extent that the testimony was inconsistent or "vague," any inconsistencies were in Muse's favor since the jury heard the testimony. If the jury believed these

15

alleged inconsistencies were material, it would have returned a different verdict. Sufficient evidence, including DNA evidence, linked Muse to the crime. *See Muse*, 2010 Tex. App. LEXIS 10418, at \*\*1-5.

      E.      *Conflict of interest (ground twenty-two).*

Muse claims that Noell "labored under a 'conflict of interest." *See* Objections at 44. Noell complained to Judge Russell about Noell's failures to visit him in jail. Muse alleges that when Noell finally visited him, Noell told him to plead guilty. *See id*. Muse further states that Noell falsely claimed that Muse threatened him before and during trial. *See id*. at 44-46. Muse also said that Noell prevented him from testifying by threatening to withdraw from the case. *See id*. at 45. Muse believes that he is entitled to an "'automatic' reversal of the conviction." *See id*. at 46.

"Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *See Strickland*, 566 U.S. at 692; *see* also *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980). In *Beets v. Scott*, the Fifth Circuit noted, "The Supreme Court has not expanded *Cuyler's* presumed prejudice standard beyond cases involving multiple representation." *See* 65 F.3d 1258, 1265 (5th Cir. 1995). Muse can only prevail, then, if he could show that Noell actively represented multiple interests. *See id*. at 1269.

Established Supreme Court precedent requires a showing under *Cuyler* that Noell represented multiple interests. "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). The Supreme Court has not extended *Cuyler* beyond multiple representation. *See id*. Animosity between attorney and client without more does not establish an "actual" conflict of

interest. *See* Beets, 65 F.3d at 1260, 1268, 1277 (5th Cir. 1996) (distinguishing between a "potential" conflict and an "actual conflict").

> Judge Russell found
>
> There is no credible evidence in the record, or otherwise, that there existed an impermissible conflict of interest between the defendant and his trial attorney for the reasons alleged by the defendant.

*See* SHCR-13 at 896. Muse's allegations, at best, establish animosity between Noell and Muse. Animosity does not equate to Noell representing multiple interests that rises to the level of reversible error. This objection is overruled.

## VI. Motion to Suppress (ground twenty).

Muse claims the trial judge erred in denying his motion to suppress. *See* Objections at 39-40. Muse claims there was no probable cause to search the truck. *See id.* at 40-41. Detective Chuck Houghton testified that he saw a jacket matching the description of the one worn by the suspect in plain view in the front seat of the truck parked in Gordon's driveway and decided to impound the truck. *See* IV RR 51-52. Police do not need a warrant to seize evidence in plain view. *See Brown*, 460 U.S. at 738–739. Judge Russell indicated that law enforcement could impound a vehicle if it believed that it had been involved in a crime. II RR 61-62. Police may "seize and impound" a vehicle, "on the basis of probable cause, for 'whatever period is necessary to obtain a warrant for the search.'" *Segura v. United States*, 468 U.S. 796, 807 (1984); *see* also *Chambers v. Maroney*, 399 U.S. 42, 51 (1970)). Police then obtained a search warrant for the truck. *See* IV RR 54-55.

> The state habeas trial court found:
>
> The Court's decision to overrule the defendant's motion to suppress was proper and based upon the facts in the record and relevant case law. The defendant has failed to allege any facts or legal authority to show otherwise.

SHCR-13 at 896.

17

Judge Russell was correct in stating that Muse had failed to show that the decision overruling the motion to suppress was erroneous. Muse has not shown that Judge Russell's application of the law was an unreasonable application of *Segura* or *Chambers*.

**VII.    Sufficiency of the Evidence (ground twenty-three).**

In his twenty-third ground for relief, Muse claims that the evidence was legally insufficient to support the verdict. *See* Fed. Pet. at 16. In his objections, Muse contends that the evidence was legally insufficient to support the verdict since the victim of the robbery, Matthew Calhoun, did not identify him as the robber. *See* Objections, at 47-48. Muse describes the state's case as "purely circumstantial". *See id.* at 48.

In reviewing the legal sufficiency of the evidence, this Court must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). The credibility of the witnesses is "beyond the scope of review" permitted by *Jackson*. *Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson*). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). "A defendant who challenges the sufficiency of the evidence 'swims upstream.'" *United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

The Twelfth Court of Appeals thoroughly reviewed the evidence related to the identity of the robber. The Court considered Muse's testimony that someone else committed the robbery while he took a nap. *See Muse*, 2010 Tex. App. LEXIS 10418, at **14-17.   The question of who committed

18

the crime was a question of fact presented to the jury. The appellate court concluded that the jury was "free to disregard" Muse's allegations and could have reasonably concluded based on the physical evidence and DNA evidence that Muse was the robber. *See id*. at \*\*16-17. The adjudication of this claim was not an unreasonable application of *Jackson*. This objection is without merit and is overruled.

## Conclusion

The Report of the Magistrate Judge, which contains the proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections adequately presented by the Petitioner to the Report, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct. Therefore the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court. It is accordingly

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. All motions not previously ruled on are hereby **DENIED**.

**So ORDERED and SIGNED this 27th day of March, 2017.**

_____
Ron Clark, United States District Judge